HATTIE ISHLER, Appellant, v. OLIVER ISHLER, Respondent.

St. Louis Court of Appeals, November 28, 1899.

1. **Divorce:** HABITUAL DRUNKENNESS FOR ONE YEAR: GROUND FOR DIVORCE. In wise and just regard for the effects of this vice on human life and happiness, our statute has declared that habitual drunkenness for the space of one year, shall constitute a ground for divorce. The evidence in the record established beyond controversy this statutory ground for divorce, therefore this cause is reversed and remanded to be proceeded with in accordance with this opinion.

2. ———: ———: ———: WEIGHT OF EVIDENCE REVIEWABLE, WHEN. The uncontradicted testimony of unimpeached witnesses ought to be disregarded when unaffected by improbability or inconsistency, and when done, will be reviewable by the appellate court.

Appeal from the Circuit Court, City of St. Louis.—*Hon. Selden P. Spencer,* Judge.

REVERSED AND REMANDED.

*Warren D. Isenberg* for appellant.

(1) This court has full power to review the evidence and make such decree as it may deem proper. Deschadt v. Deschadt, 59 Mo. App. 102; Morris v. Morris, 60 Mo. App. 86; Kilpatrick v. Kilpatrick, 80 Mo. App. 70. (2) The desertion made out by appellant constitutes a *prima facie* case. Keaton v. Keaton, 74 Mo. App. 178. The wife leaving under instructions of physician with consent of husband is not bound to return unless requested and furnished means to return on. Spingler v. Spingler, 38 Mo. App. 266. The charge or ground of habitual drunkenness was established; was continuous and habitual within the meaning of our statute. Golding v. Golding, 6 Mo. App. 602; Moore v. Moore, 41 Mo. App. 176. (3) Courts ought not to disregard the uncontradicted testimony of unimpeached witnesses. Cohn v. City of Kansas, 108 Mo. 387; Efron v. Car Co., 59 Mo. App. 641. In all cases the positive testimony of an otherwise unimpeached witness, can only be disregarded when its improbability or inconsistency furnishes a reasonable ground for doing so; and this improbability or inconsistency must appear from the facts and circumstances disclosed by the evidence. It can not be arbitrarily disregarded by either court or jury for reasons resting wholly in their own minds or imaginations and not based upon anything appearing in the trial. Bank v. Donald, 58 Minn. 493; Clark v. McGrath, 22 S. W. Rep. 527.

No brief filed for respondent.

BOND, J.—The plaintiff seeks a divorce on the three statutory grounds, willful desertion and habitual drunkenness for one year, and indignities rendering her condition intolerable. Upon the hearing the court dismissed the bill without prejudice. Plaintiff appealed.

The evidence shows that the parties were married in Illinois in 1875, and after living there until the birth of one child, that they moved to Kankakee, Kansas, where the husband began to fall into the habits of intoxication; that they lived there ten years, and then moved to Horton, Kansas, where they remained seven or eight years, during most of which time the husband continued to drink to excess and failed to provide for his family, rendering it necessary for the wife to keep boarders, take in sewing, and do washing and ironing for the support of herself and children, which resulted in the breaking down of her health, so that she became bedridden for about six months of the last year of their residence in Horton; that her physician advised her, in order to be cured, that she must have a change of climate; that for this purpose, her husband having no money, she borrowed a sufficient sum from her mother and other relatives to take her to Illinois to reside with her uncle, who was a physician, where she remained seven or eight months and came back to St. Louis, and has resided there for more than a year before the institution of this suit; that her husband in the meantime came to St. Louis, his wife refusing to live with him there on account of his intemperance and failure to contribute to her support. With reference to the habits of the husband in respect to drink before he moved to St. Louis, the mother of plaintiff testified as follows:

"Q. You are the mother of Mrs. Ishler? A. Yes, sir.

"Q.   Did you ever live in Kankakee, Kansas, when Mr. and Mrs. Ishler lived there?   A.   Yes, sir.

"Q.   How long did you live there?   A.   About eighteen years.

"Q.   Well you may state to the court what, if anything, was Mr. Ishler's habit with regard to being drunk or sober while he lived at Kankakee, Kansas?   A.   Well, he would get drunk when he got whiskey to get drunk on.

"The Court:   How often would that be?   A.   Whenever he had any money.

"The Court:   How often would that be?   A.   Why, whenever he had any money.

"The Court:   I know, but how often would he have money to buy it with?   A.   Well, not very often.

"Q.   How many times in a month?   A.   About every day or two in the month."

This witness further testified that the husband did not support his family thereafter, and as his wife became ill at Horton, Kansas, witness loaned her the money to go to Illinois, which trip was made under the directions of the family physician, the husband saying he had no money.   As to the habits of the husband in this respect when the wife went to Illinois, and while he was in St. Louis, the sister of plaintiff testified as follows:

"Q.   Now you spoke about his boarding with you; where were you living at the time he boarded with you?   A.   He boarded with me when I lived at 3913 Cote Brilliante.

"Q.   What was he doing, working at the trade?   A.   Yes, sir.

"Q.   What was his habits with regard to being drunk or sober while he was there?   A.   Well, he was drunk most of the time.

"The Court:   How long did he board with you?   A.   I think about seven months; he boarded with me two different times about six or seven months.

"Q. What was he doing? A. Working at the carpenter trade.

"Q. When was he drunk, when he came home at night? A. Yes, sir.

"Q. He would fill up before he came home? A. Yes, sir.

"Q. Then he would go next day and do a day's work? A. Yes, sir.

"Q. And come back again at night drunk? A. Yes, sir.

"Q. At those times he did not know what he was doing? A. No, sir; there was times he didn't know what he was doing.

"The Court: How often was that? A. Very often.

"Q. How often? A. Well, I couldn't tell how often, but often, he couldn't talk if he wanted to, didn't know what he was doing.

"Q. At night? A. Yes, sir."

Further as to the habits of the husband in St. Louis the niece testified, to wit:

"Q. What was his condition while in St. Louis in regard to being drunk or sober? A. He was drunk most of the time. He was always under the influence, sometimes he didn't stagger.

"Q. Was he drinking while he was here? A. Yes, sir, most of the time.

"Q. Was he working while he was here? A. Yes, sir, most of the time."

Further on this point the married daughter of the plaintiff testified that in 1898 she and her husband occupied the same house with her father; that they provided food and he rented the house, but failed to pay the rent; that he ate with them, "was intoxicated most of the time," and "spent nearly all of his earnings for liquor."

According to the foregoing evidence it was the custom

and fixed habit of the husband, developed many years ago, and continued to the present time, to make himself drunk whenever he could obtain a beverage which would produce that condition. The constant indulgence of this habit took away the support due his family, cast the burden on his wife and neighbors, and subjected the plaintiff as wife to mental and physical conditions of the most distressing nature. In wise and just regard for the effects of this vice on human life and happiness, our statute has declared that habitual drunkenness for the space of one year, shall constitute a ground for divorce. The evidence in this record established beyond controversy this statutory cause for divorce. There being also affirmative proof of plaintiff's good conduct and wifely disposition, and that she was the innocent and injured party, she had a perfect right to the relief provided by the statute. For the failure of the trial judge so to decree, the judgment in this case is reversed and the cause remanded, to be proceeded with in accordance with this opinion. All concur.